**UNITED STATES of America,
Plaintiff, Appellee,**

v.

**Frank L. MARRAPESE,
Defendant, Appellant.**

**No. 86–1045.**

United States Court of Appeals,
First Circuit.

Heard March 5, 1987.
Decided Aug. 14, 1987.

See also, D.C., 610 F.Supp. 991.

Edward J. Romano, Providence, R.I., by appointment of the Court, for defendant, appellant.

Maury S. Epner, Atty., Dept. of Justice, Washington, D.C., with whom Lincoln Almond, U.S. Atty., Providence, R.I., and John Voorhees, Sp. Atty., Dept. of Justice, Washington, D.C., were on brief for plaintiff, appellee.

Before CAMPBELL, Chief Judge, and COFFIN and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

Frank L. Marrapese appeals from his conviction of obstruction of justice under 18 U.S.C. § 1503 and from his sentencing as a dangerous special offender under 18 U.S.C. § 3575.

Marrapese was originally indicted in May 1982 for his involvement in a stolen goods conspiracy. While that case was proceeding, Marrapese contacted a witness and tried to induce him to change his testimony. The witness contacted the government and was outfitted with a body tape recorder to wear to a meeting with Marrapese at Marrapese's lawyer's office. The tape recorded Marrapese requesting the witness to tell "three lies." As soon as the tape was played in the stolen goods trial, Marrapese changed his plea and was sentenced to ten years' imprisonment.

The government subsequently charged Marrapese, his lawyer, and a third person on May 12, 1983, with conspiring to suborn perjury. Marrapese's trial, which was severed from the other two defendants, resulted in a deadlocked jury and a mistrial in March 1984.

The court scheduled a retrial for December 3, 1984, but Marrapese challenged the grand jury that had produced the conspiracy indictment. The government then convened a second grand jury in February, 1985, which issued a superseding indictment charging Marrapese with conspiracy to suborn perjury *and,* for the first time, obstruction of justice. At the retrial Marrapese was acquitted of the conspiracy count and convicted of obstruction of justice. The district court sentenced him to fifteen years under the dangerous special offender statute, 18 U.S.C. § 3575.

On appeal Marrapese alleges three errors. First, he argues the obstruction of justice count should have been dismissed as a product of vindictive prosecution. Second, he argues that a statement in the prosecutor's closing argument was prejudicial error. And third, he argues that the application of the dangerous special offender statute violated his right to due process and constituted cruel and unusual punishment.

## I. *Vindictive Prosecution*

■■■ There are two ways a defendant may show vindictive prosecution. First, a defendant may produce evidence of *actual* vindictiveness sufficient to show a due process violation. *See United States v. Goodwin,* 457 U.S. 368, 380 n. 12, 102 S.Ct. 2485, 2492 n. 12, 73 L.Ed.2d 74 (1982). Alternatively, a defendant may convince a court that the circumstances show there is sufficient "likelihood of vindictiveness" to warrant a presumption of vindictiveness. *See Goodwin, id.* 457 U.S. at 376, 102 S.Ct. at 2490; *Blackledge v. Perry,* 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974). If so, the prosecutor bears the burden of rebutting that presumption by showing objective reasons for the additional charge that were not present when the original charge was brought. *Goodwin,* 457 U.S. at 376 n. 8, 102 S.Ct. at 2490 n. 8.

## A. *Evidence of Actual Vindictiveness*

■■ Marrapese points to the following evidence of vindictiveness: (1) the prosecutor made jocular, derogatory comments about Marrapese in a chambers conference; (2) Marrapese and the prosecutor had an altercation when the prosecutor asked him to cooperate in the case against his lawyer; (3) the prosecutor questioned the wisdom of Marrapese's attack on the grand jury process, commenting that he could always issue a superseding indictment, with additional counts if necessary; and (4) the aggressive defense throughout the companion conspiracy cases aggravated the prosecutor.

The first two events were well removed in time from the superseding indictment and not strong evidence in any case. The third event, the prosecutor's comments to defense counsel, appears at first glance to be more troubling. But a careful analysis of the allegations and the context in which they arose provides adequate support for the district court's conclusion that defense counsel overreacted, reading a sinister motive into innocuous remarks. Finally, although the defendants in these cases pursued their defense very aggressively, Marrapese can point to no evidence, other than that just recited, that the prosecutor behaved in anything other than a professional manner, or that he was any more aggravated by the defense tactics than prosecutors are generally. A criminal trial is not a tea party.

Additionally, the district court found the prosecutor's explanation of the reason for the addition of the obstruction of justice count credible. In October 1982, seven months before Marrapese was originally indicted in this case, Congress enacted the Victim and Witness Protection Act, 18 U.S.C. § 1512, which prohibits, *inter alia,* the use of violence or coercion to influence the testimony of a witness. The Act also amended 18 U.S.C. § 1503 by eliminating its reference to influencing, intimidating, or impeding witnesses. The prosecutor understood the Act and the amendment to mean that § 1503 no longer prohibited noncoercive efforts to influence witnesses. The reasonableness of this understanding was demonstrated in March, 1984, when the Second Circuit stated, in dictum, that "Congress intended to remove witnesses

entirely from the scope of § 1503." *United States v. Hernández,* 730 F.2d 895, 898 (2d Cir.1984).

Subsequent court decisions, however, questioned this reading of § 1503. These later decisions focused on the omnibus clause of § 1503, which was not changed by the October, 1982 amendments, and which prohibits all "endeavors to influence, obstruct, or impede[ ] the due administration of justice." Non-coercive tampering with witnesses, these courts concluded, *is* covered by this omnibus clause. *See United States v. Lester,* 749 F.2d 1288 (9th Cir.1984); *United States v. Beatty,* 587 F.Supp. 1325 (E.D.N.Y.1984); *see also United States v. Risken,* 788 F.2d 1361 (8th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 329, 93 L.Ed.2d 302 (1986); *United States v. Rovetuso,* 768 F.2d 809 (7th Cir. 1985), *cert. denied,* — U.S. —, 106 S.Ct. 1951, 90 L.Ed.2d 360 (1986); *United States v. Wesley,* 748 F.2d 962 (5th Cir.1984), *cert. denied,* 471 U.S. 1130, 105 S.Ct. 2664, 86 L.Ed.2d 281 (1985). The prosecutor in this case learned of the *Lester* decision in December, 1984, and immediately recommended to his supervisor that Marrapese be charged with obstruction of justice for his noncoercive witness tampering. Based on this evidence, and on the prosecutor's testimony that it was easier to issue a new indictment than to defend the old one against Marrapese's challenge, the district court found that there was no credible evidence linking the superseding indictment with any vindictiveness by the prosecutor. That finding was not clearly erroneous.

### B. Likelihood of Vindictiveness in the Circumstances

Marrapese points to two circumstances in this case that warrant a presumption of vindictive prosecution. First, he was indicted for obstruction of justice only after his trial on the conspiracy charge ended in a mistrial. And second, the obstruction of justice indictment followed Marrapese's challenge to the grand jury that issued the original conspiracy indictment. Marrapese argues that in these circumstances the filing of the additional charge was likely intended to punish him for vigorously asserting his procedural rights.

We do not find this assertion as compelling as Marrapese would like. Marrapese's superseding indictment, filed after the mistrial and the challenge to the grand jury, does not present the same "likelihood of vindictiveness" that the Supreme Court found in the only cases which warranted the presumption Marrapese seeks here. *See United States v. Khan,* 787 F.2d 28, 32–33 (2d Cir.1986) (no presumption of vindictiveness when additional charges added after a mistrial due to a hung jury).

In *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the appellant received a longer sentence after a retrial than he had received after his first, constitutionally flawed, trial. Due to the likelihood that the higher sentence was an attempt to punish appellant for asserting his right to appeal, the Court held that a judge could not impose an enhanced sentence on retrial unless he specifically identified in the record his reasons for doing so. Those reasons, moreover, must be "based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Id.* 395 U.S. at 726, 89 S.Ct. at 2081. In effect, the *Pearce* Court applied a presumption of vindictiveness to the judge's action, a presumption rebuttable only by objective information in the record. *Goodwin,* 457 U.S. at 374, 102 S.Ct. at 2489.

The only other two cases in which the Court applied a presumption of vindictiveness also involved retrials after a trial and conviction. Both *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628, and *Thigpen v. Roberts,* 468 U.S. 27, 104 S.Ct. 2916, 82 L.Ed.2d 23 (1984), were habeas actions brought by defendants who, after they asserted their statutory right to trial de novo following misdemeanor convictions, were charged with felonies arising out of the same facts that led to the misdemeanors. As in *Pearce,* the effective price of exercising their rights was the risk of greater punishment. The Court explained:

A prosecutor clearly has a considerable stake in discouraging convicted misdemeanants from appealing and thus obtaining a trial de novo in the Superior Court, since such an appeal will clearly require increased expenditures of prosecutorial resources before the defendant's conviction becomes final, and may even result in a formerly convicted defendant's going free. And, if the prosecutor has the means readily at hand to discourage such appeals—by "upping the ante" through a felony indictment whenever a convicted misdemeanant pursues his statutory appellate remedy—the State can insure that only the most hardy defendants will brave the hazards of a de novo trial.

*Blackledge*, 417 U.S. at 27–28, 94 S.Ct. at 2102. The focus, then, in evaluating the likelihood of vindictiveness is not only on the right of the defendant, but also on the incentive of the prosecutor to prevent the defendant from asserting that right.

▆ In this case the prosecutor had very little incentive to discourage Marrapese from challenging the grand jury proceeding. Unlike the assertion of a right to a de novo trial, a challenge to the composition of a grand jury poses only a minor threat to scarce prosecutorial resources. Thus, there is less reason for a presumption of vindictiveness than in *Blackledge* or *Thigpen. See Goodwin*, 457 U.S. at 381, 102 S.Ct. at 2493 ("It is unrealistic to assume that a prosecutor's probable response to such [routine pretrial] motions is to seek to penalize and deter.").[1] And it is unlikely any retaliatory animus flowed from the first trial's ending in a mistrial; after all, the mistrial was due to a hung jury, not to any legal challenge by Marrapese. *Compare United States v. Khan*, 787 F.2d 28, 32–33 (2d Cir.1986) (hung jury unlikely to inspire prosecutorial wrath) *with United States v. Jamison*, 505 F.2d 407 (D.C.Cir. 1974) (defendant's motion for mistrial on

ground of ineffective counsel may lead to vindictiveness).

Marrapese's situation presented less likelihood of vindictiveness than the additional charge filed against the defendant in *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), who forced the prosecutor to go to trial by refusing to plead guilty. Here, the prosecutor had already prepared for trial and scheduled the retrial; Marrapese's actions were little more than an annoyance. In *Bordenkircher*, where the Supreme Court refused to apply a presumption, the defendant's refusal resulted in a serious drain on prosecutorial resources. *See also United States v. Goodwin*, 457 U.S. at 381–83, 102 S.Ct. at 2492–94 (no presumption of vindictiveness when a defendant was indicted on felony charges after requesting a jury trial for a misdemeanor charge).

▆ Were the presumption nevertheless to apply to this case, the prosecutor's explanation of the changed circumstances that led to the obstruction of justice charge would rebut any likelihood of vindictiveness. *See ante* at 147. The inconsistency of *Lester*, 749 F.2d 1288, with the prosecutor's original, reasonable understanding of § 1503 provides a sufficient, objective change of circumstances to dispel the concerns that would underlie a presumption of vindictiveness. *See Blackledge*, 417 U.S. at 29 n. 7, 94 S.Ct. at 2103 n. 7 ("[t]his would clearly be a different case if the state had shown that it was impossible to proceed on the more serious charge at the outset"); *Pearce*, 395 U.S. at 726, 89 S.Ct. at 2081 (requiring "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing" to justify an increased sentence after a retrial on the same charge). Although the rebuttal here does not fall neatly within the language of either of these pronouncements, we think it

---

**1.** This case is likewise distinguishable from *Lovett v. Butterworth*, 610 F.2d 1002 (1st Cir.1979), where we found a due process violation in the Commonwealth's decision to re-indict defendant on a more serious offense after he had been convicted in district court and had subsequently exercised his right to seek a de novo trial in superior court. *Lovett*—like *Blackledge* and *Thigpen*—involved the assertion of a procedural right—an appeal—carrying different and graver consequences to the prosecution and to defendants generally than are implicated here.

an adequate justification for the prosecutor's action.

## II. *The Closing Argument*

■ Early in his closing argument, Marrapese's counsel told the jury that he would not

> stand before you and tell you [that appellant] didn't say on the tape 'tell three lies.' You heard it, you're going to hear it over and over again. One of the charges in this case, however, is the charge of conspiracy. * * * Now you can talk about this three lies conversation all you want * * * but please don't forget that [appellant's alleged coconspirator,] was not in the room.

The counsel then devoted nearly all of the remainder of his argument to the conspiracy charge.

> The prosecutor in his closing argued:

> Mr. Egbert started out his argument by conceding the first count of the Indictment. So I think we ought to just put that count with respect to Mr. Marrapese on the shelf for the time being because he concedes the fact that Mr. Marrapese said, "Tell the three lies." And really what the defense is getting down to in this case is the conspiracy count.

Marrapese claims that the district court should have declared a mistrial when he objected to this "inflammatory and highly prejudicial" statement.

The district court denied the request for a mistrial stating:

> Well Mr. Egbert, I'll make two observations. I thought, and I feel certain that the jury thought Mr. Voorhees' argument as being in the nature of an argument, that since you had not argued Mr. Marrapese's guilt or innocence as to Count I of the indictment, that in effect, you were conceding his guilt. That's the way I took it, not that you had ever said you were conceding his guilt. And, number two, there was no contemporaneous objection. If there had been any legitimate question in your mind, and there had been a contemporaneous objection, I might have if I thought there was any-

thing to cure, and I really don't, but I might have done so.

The district judge subsequently, *sua sponte*, instructed the jury that "[t]here is nothing with respect to either count of this indictment ... which is conceded or should be taken for granted."

There was no mistrial. As the district court noted, the prosecutor's statement was a fair comment on the defense counsel's closing argument. *Cf. United States v. Glantz*, 810 F.2d 316, 323 (1st Cir.1987) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974)) (the court "should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury ... will draw that meaning from the plethora of less damaging interpretations"). Any unfair prejudice from that statement was adequately cured by the judge's instruction. *See United States v. Capone*, 683 F.2d 582, 586–87 (1st Cir.1982).

## III. *Sentencing Under the Dangerous Special Offender Statute*

■ Marrapese argues that his sentencing under the dangerous special offender statute, 18 U.S.C. § 3575, violated due process and constitutes cruel and unusual punishment. He claims that his sentence in the stolen goods case had already been enhanced because of his obstruction of justice and that for the court then to enhance his sentence in the obstruction of justice case was fundamentally unfair.

In the stolen goods case the prosecutor argued to the sentencing judge that Marrapese deserved more time than the other defendants because he was a professional criminal who was willing to corrupt the criminal justice system to get his way, in contrast to the other defendants who went astray only this time and were remorseful. Thus, in some sense it may be true that Marrapese's relatively long sentence in the stolen goods case was due in part to his obstruction of justice, but the connection is a very weak one. In sentencing Marrapese, the judge stated that he was primarily relying on the presentence report.

Furthermore, Marrapese showed a remarkable lack of remorse in his statement to the sentencing judge.[2] Nevertheless, the judge sentenced him to only ten years, far less than the twenty-five year maximum he could have received, and less than the fifteen years the prosecution recommended. That sentence was proportionate to the crime and clearly within the trial court's discretion. It was not an enhanced sentence.

■ In the obstruction of justice case the prosecution sought, for the first time, to enhance Marrapese's sentence under the dangerous special offender statute, 18 U.S.C. § 3575. Marrapese does not claim that the procedural requirements of § 3575 were violated. Nor does he claim that the sentence he received is greater than § 3575 authorizes. Rather, he claims that § 3575 should not have been applied at all. But, if the procedural requirements of § 3575 are followed, the district court has the same broad discretion to sentence under that statute as under the usual sentencing procedure. *See United States v. Inendino*, 604 F.2d 458 (7th Cir.1979). Having studied the record in this case and having paid particular attention to the statement of the district court at sentencing, we are fully convinced that the sentence satisfies constitutional norms, *see Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), and that the application of the dangerous special offender statute to Marrapese was appropriate.

**2.** Marrapese's nearly complete statement follows:

  \*   \*   \*   \*   \*   \*

 Now my part in this scheme was the least; and I'm guilty. And, your Honor, I would have took a plea if they offered me—they offered me the maximum, your Honor. I had to come to trial.

  \*   \*   \*   \*   \*   \*

Mr. Smith did very well for himself, your Honor, seeing that he was the main perpetrator of this crime; but I have to take it because I'm Frank L. "Bobo" Marrapese, reputed to be an organized crime figure. What would they have done to me if these weren't Lazy Boy chairs? Suppose they were couches? I just want to be fair. I had enough injustice. I want some justice from you.

The conviction and sentence are *affirmed.*

The minute you let me out on bail Mr. Gale came into the cell back there and tried to proposition me to be a Government witness. Your Honor, everything is falling on me, Frank L. "Bobo" Marrapese, Jr. I'm a little tired of it, your Honor. Your, Honor, I'm here; I'm guilty. I never would have come to trial if they made a fair deal of "X" amount of years in Prison. They want me off the streets; but I had less participation in this crime, the least.

 I would just like to say this, your Honor: as far as Mr. Smith, William Smith and Al Smith go, they're just another reason why contraceptives should be used in the home. Now, in the words of Pygmy, your Honor, "Sock it to me. I'm ready for it."