UNITED STATES of America,
Plaintiff,

v.

Edwin AVILES–SIERRA, Defendant.

Criminal No. 06–405 (FAB).

United States District Court,
D. Puerto Rico.

Sept. 15, 2008.

Lynn M. Doble–Salicrup, United States Attorney's Office, San Juan, PR, for Plaintiff.

Joseph C. Laws, Hector E. Guzman–Silva, Federal Public Defender's Office, Hato Rey, PR, for Defendant.

## OPINION AND ORDER

BESOSA, District Judge.

On August 25, 2008, defendant Edwin Aviles–Sierra ("Aviles–Sierra" or "defendant") filed a motion to dismiss the superseding indictment arguing vindictive prosecution (Docket No. 109). The defendant filed a second motion to dismiss on August 31, 2008 alleging a violation of Federal Rule of Criminal Procedure 16 (Docket No. 112). The government opposed the first motion to dismiss on September 5, 2008 (Docket No. 115), and the second motion to dismiss on September 8, 2008 (Docket No. 116). The defendant responded to the government's second opposition the following day, September 9, 2008 (Docket No. 117).

For the reasons provided below, the court **DENIES** both motions to dismiss.

## I. Background

On November 27, 2006, Aviles–Sierra took his van aboard the ferry which crosses from the Dominican Republic to Puerto Rico. In Puerto Rico, a dog alerted agents from Immigration and Customs Enforcement ("ICE") to the presence of drugs hidden in the van. Aviles–Sierra was questioned by ICE agents and arrested. He was then initially indicted on charges of possessing and importing cocaine into the United States with the intent to distribute, in violation of 21 U.S.C. §§ 952(a) and 841(a)(1) & (b)(1)(A)(ii).

Trial began on March 5, 2007. During the second day of trial, ICE Agent Angelico Santiago–Rivera testified that the defendant had been asked by agents "if he was going to take the blame for it [the cocaine], and he said yes." Defense counsel immediately objected on the grounds that he had not been informed by the prosecution of the admission by his client; it was not part of the discovery provided by the government. Defense counsel then moved for a mistrial.

This court asked the prosecutor if he had knowledge of the inculpatory statement prior to its revelation on the stand. The prosecutor replied that he had spoken with Santiago–Rivera about the case, but he "did not recall specifically that information being indicated." This court also reviewed Santiago–Rivera's written report and found no mention of the inculpatory statement revealed in court in it.

Defense counsel questioned Santiago–Rivera, who admitted that he had not included the inculpatory statement in his written report and stated that he did not remember if he had told the prosecutor about the statement.

After defense counsel renewed his motion for a mistrial, the prosecutor joined in the motion. Because of the prosecutor's

agreement, the court granted the mistrial motion, rather than simply granting the defense a continuance to incorporate the delayed discovery of the defendant's admission into his trial strategy.

Subsequent to the mistrial, on March 28, 2007, a grand jury returned a superseding indictment against Aviles–Sierra. This indictment added two counts, charging the defendant with possessing with intent to distribute *cocaine base* [crack cocaine] in violation of 21 U.S.C. §§ 952(a) and 841(a)(1) & (b)(1)(A)(ii). The cocaine base in question was found along with the cocaine in Aviles–Sierra's van. As the prosecution has explained, the first indictment only included two counts concerning cocaine (and not cocaine base) because a "local test" only indicated the presence of cocaine. This first indictment charged Aviles–Sierra with importing and possessing 7.4 gross kilograms of cocaine. On February 12, 2007, before the trial, a DEA laboratory issued its report on the seized drugs. The laboratory report indicates that the "exhibits submitted" contain 5.988 kilograms of cocaine hydrochloride, commonly called powder cocaine, and 460.5 grams, net weight, of cocaine base. The prosecution says that a decision was made prior to the trial not to supersede the indictment once the laboratory was received in order to avoid any possible delays associated with a superseding indictment.

After the grand jury issued the superseding indictment, defendant filed a motion to dismiss the superseding indictment on double jeopardy grounds (as well as because of the discovery violation). This court denied the motion explaining that it could not find that the United States acted deliberately to force Aviles–Sierra to request a mistrial. The court also stated that it did not find any bad faith on the part of the United States in not disclosing the statement. The First

Circuit Court of Appeals affirmed this court's denial of the motion to dismiss based upon double jeopardy grounds.

## II. Discussion

### A. Vindictive Prosecution

"[T]he very purpose of instituting criminal proceedings against an individual is to punish; therefore, the mere presence of a punitive motivation behind prosecutorial action does not render such action constitutionally violative." *United States v. Contreras,* 108 F.3d 1255, 1262 (10th Cir.1997)(citing *United States v. Goodwin,* 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982)). Nonetheless, "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *Goodwin,* 457 U.S. at 372, 102 S.Ct. 2485 (quoting *Bordenkircher v. Hayes,* 434 U.S. 357, 363 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978)). Accordingly, a prosecutor may penalize a defendant for violating the law, but he may not do so for exercising a protected statutory or constitutional right. *Id.*

■ Vindictive prosecution may be shown in either of two ways. A defendant may produce evidence of actual vindictiveness sufficient to show a due process violation. *United States v. Marrapese,* 826 F.2d 145, (1st Cir.1987) (citing *Goodwin,* 457 U.S. at 380 n. 12, 102 S.Ct. at 2491 n. 12, 73 L.Ed.2d 74). Or, as is more often argued, a defendant may show that the circumstances of a particular case present a sufficient "'likelihood of vindictiveness' to warrant a presumption of vindictiveness." *Id.* (citing *Goodwin,* 457 U.S. at 376, 102 S.Ct. at 2490; *Blackledge v. Perry,* 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974)). Where a sufficient likelihood of vindictiveness exists to justify the presumption, the prosecutor bears the burden of rebutting that presumption by

showing that legitimate reasons exist for the prosecution.[1] *United States v. Lanoue*, 137 F.3d 656, 664 (1st Cir.1998)(citing *Goodwin*, 457 U.S. at 376 n. 8, 102 S.Ct. at 2490 n. 8).

In this case, the defendant only argues that he is entitled to a presumption of vindictiveness (and not that he can show actual vindictiveness). The government initially charged the defendant with two felony counts involving cocaine. After this court granted a mistrial, a grand jury issued a superseding indictment adding two counts involving cocaine base. Prior to the start of trial, the prosecution received police reports and lab reports indicating that the drugs seized included cocaine base, as well as cocaine; therefore, the government knew prior to trial that it could have charged the defendant with the two additional counts which were added later. The conduct underlying both indictments was identical. Accordingly, the defendant argues that it appears that the government penalized him for moving for a mistrial based upon the government's violation of Federal Rule of Criminal Procedure 16 because the additional counts involving cocaine base could have been added prior to trial.

These circumstances, however, do not raise a realistic likelihood of vindictiveness sufficient to warrant applying the presumption of vindictiveness. The government supported the defendant's motion for a mistrial. In fact, the court would simply have granted the defendant a continuance (as it may under FED.R.CRIM.P. 16(d)(2)) to prepare for cross examination of the government's witness rather than order a mistrial, if it were not for the prosecutor's willingness to consent to a mistrial. (Docket No. 79, p. 2) Given the prosecutor's ready consent to the mistrial, there is no basis for finding that the defendant's actions in some way likely inspired the prosecutor to vindictive behavior.[2] *See United States v. Perry*, 335 F.3d 316 (4th Cir.2003) (finding that no reasonable likelihood of vindictiveness existed where a new

---

1. Notably, in *Marrapese*, the First Circuit Court of Appeals described the government's burden to rebut as follows: "the prosecutor bears the burden of rebutting that presumption by showing objective reasons for the additional charge that were not present when the original charge was brought." 826 F.2d at 147. Although this formulation of the burden differs from that found in *Lanoue*, *Lanoue* did not expressly overrule the explanation of the government's burden offered in *Marrapese*. Regardless, the outcome of this case would be no different if the court only looked at the *Marrapese* interpretation of the government's burden.

2. The Supreme Court cases addressing prosecutorial vindictiveness have drawn a line between recharging a defendant pre-trial versus doing so post-conviction. For example, cases in which the Supreme Court applied a presumption of vindictiveness involved retrials after a trial and conviction. *See Thigpen v. Roberts*, 468 U.S. 27, 104 S.Ct. 2916, 82 L.Ed.2d 23 (1984); *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *see also Marrapese*, 826 F.2d at 148. The Supreme Court has not applied the presumption, on the other hand, where the government has increased charges against defendants who refused guilty pleas. *See U.S. v. Goodwin*, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982); *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). "[A] post-mistrial charging decision 'seems to fall between the pretrial-postconviction dichotomy established by the Supreme Court.' " *Perry*, 335 F.3d at 324 (quoting *United States v. Whaley*, 830 F.2d 1469, 1478 (7th Cir.1987)) abrogated on other grounds as recognized in *United States v. Durrive*, 902 F.2d 1221, 1228 (7th Cir.1990). There is a plethora of circuit court cases on this issue. *See, e.g. Perry*, 335 F.3d 316; *Khan*, 787 F.2d 28. Nonetheless both the defendant and the government failed to raise the issue to the court's attention or to cite any circuit case law dealing with the issue, a matter of great concern to the court.

charge was lodged following an unopposed mistrial resulting from a deadlocked jury); *Marrapese*, 826 F.2d at 148–49 (finding no presumption of vindictiveness where additional charge added after mistrial resulting from hung jury); *United States v. Khan*, 787 F.2d 28, 32–33 (2d Cir.1986) (finding no presumption of vindictiveness where additional charges added after prosecution consented to a mistrial involving a hung jury); *cf. United States v. Motley*, 655 F.2d 186, 188–89 (9th Cir.1981) (applying a presumption of vindictiveness where government reindicted defendant on more severe charges following the court's grant of a mistrial over the government's objection); *United States v. Jamison*, 505 F.2d 407, (D.C.Cir.1974) (finding prosecutorial vindictiveness where government reindicted defendant on more serious charges following the court's grant of a mistrial due to error in the conduct of the trial by defense counsel over the government's objection).

■ Even if the presumption were to apply to this case, the prosecutor's explanation of the changed circumstances that led to the superseding indictment with two additional counts rebuts the likelihood of vindictiveness. In the Government's opposition to the defendant's motion to dismiss the superseding indictment, the prosecutor explained that the government received the chemical analysis of the seized drugs which revealed the presence of cocaine base in addition to cocaine approximately three weeks prior to the date of trial. At

this point, the government decided not to supersede the original indictment to include counts related to the cocaine base to avoid unnecessary delays so close to trial. Once the motion for mistrial was granted with the government's agreement, the government decided it was then prudent to supersede the original indictment by issuing a new indictment with the two additional counts in case the court later dismissed the initial counts as a remedy for the discovery violation. The court hereby finds that the government's addition of the two counts given the possible dismissal of the initial counts constitutes a sufficient legitimate basis for rebutting a presumption of vindictiveness.

**B. Violation of Federal Rule of Criminal Procedure 16[3]**

■ The government must, upon a defendant's request, disclose to the defendant "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial." FED. R.CRIM.P. 16(a)(1)(A). The government does not dispute that it failed to inform the defense that the defendant had admitted in essence that the drugs were his; a fact to which Agent Santiago–Rivera testified at trial. This, after all, was the basis for the defense's motion for a mistrial, which the government supported. The issue, however, is whether this court, more than one

3. As discussed below, there is First Circuit case law providing the standards to apply when a defendant alleges a Rule 16 violation. Once again, the parties (government and defendant both) failed to cite the relevant case law. The government did not cite a single case in its opposition! (The closest the defendant came was to cite (without pincites) a District of Maine case for the boiler-plate proposition that a district court has broad discretion to address discovery violations in light of their seriousness.) A second-year law student should know how to find and cite a standard for a given proposition. If controlling authority is not available then persuasive authority should be cited. It is unacceptable for any lawyer, much less an AFPD or an AUSA to fail to meet his or her obligation as an officer of the court to provide the court with the authority (including case law) relevant to a motion to be ruled upon.

year after trial, and after the defendant failed to raise this issue on appeal, should grant any additional remedy to address the belated appearance of discoverable material (the defendant's admission to a government agent) in the trial that ended in a mistrial.

As the First Circuit has noted,

"discovery obligations set forth in FED. R.CRIM.P. 16 are designed: 'to contribute to the fair and efficient administration of justice by providing the defendant with sufficient information upon which to base an informed plea and litigation strategy; by facilitating the raising of objections to admissibility prior to trial; by minimizing the undesirable effect of surprise at trial; and by contributing to the accuracy of the fact-finding process.' "

*United States v. Candelaria–Silva,* 162 F.3d 698, 703 (1st Cir.1998) (quoting FED. R.CRIM.P. 16 (advisory committee note)). A district court has broad discretion to address violations in light of their seriousness. *Id.* (citation omitted). Defendant argues that the only adequate remedy for the Rule 16 violation he alleges is the dismissal of the charges in this case. The government counters by arguing that an appropriate remedy for the discovery violation was already imposed by the court when it granted a mistrial, thus obviating the need for any additional remedial order.

As a general rule, "when discovery material makes a belated appearance, a criminal defendant must ordinarily seek a continuance if he intends to claim prejudice." *United States v. Sepulveda,* 15 F.3d 1161, 1178 (1st Cir.1993). Although defendant here did not expressly request a continuance, he did immediately move for a mistrial once Agent Santiago–Rivera related defendant's admission. This court views the defendant's motion for mistrial as tantamount to requesting a continuance because it signaled the urgency of the issue

for the defense and it provided the defense with time to incorporate the information into the defense's trial strategy. *See id.*

In ruling upon a defendant's Rule 16 motion, a court must also weigh whether the government acted in bad faith and if the defendant was prejudiced by the delayed discovery. *United States v. Tajeddini,* 996 F.2d 1278, 1288 (1st Cir.1993); *United States v. Olmstead,* 832 F.2d 642, 649 (1st Cir.1987); *United States v. Hemmer,* 729 F.2d 10, 13–14 (1st Cir.1984). As this court has already noted, the disclosure here occurred because the testifying agent failed to include the admission in his written report submitted to the prosecutor (and provided to the defense in discovery) and he failed to mention it to the prosecutor when the prosecutor asked him about his questioning of the defendant. (Docket No. 79, p. 5) The apparent negligence on the part of Agent Santiago–Rivera does not indicate any bad faith or willful misconduct on the part of the AUSA in this case. *Hemmer,* 729 F.2d at 13 (finding no bad faith on the part of the AUSA where the FBI case agent caused the delay in producing discoverable reports); *see Sepulveda,* 15 F.3d at 1179 ("[t]he prosecution was caught unawares; it never knew of the report's existence, and therefore, could not have deliberately withheld it."). Accordingly, finding no bad faith, the court turns to the question of prejudice.

In evaluating whether, and to what extent, the defendant was prejudiced by the delayed discovery, the court must ask "whether the actual disclosure altered the subsequent defense strategy, and whether given timely disclosure a different defense strategy would have resulted." *Olmstead,* 832 F.2d at 649 (citing *Hemmer,* 729 F.2d at 13). This inquiry must be adapted somewhat, to be applicable here, because a mistrial was declared shortly after the defense became aware of the discovery viola-

tion. For this reason, there is no evidence as to whether the defense altered its strategy subsequent to being made aware of the delayed discovery. The defense asserts that it was pursuing the theory that the defendant was unaware of the presence of the drugs in his vehicle, and that it must now change its strategy in light of the admission. This undoubtedly represents some prejudice to the defendant. The defense, however, has now had more than a year to prepare for a new trial with knowledge that the admission exists. This preparation time minimizes the prejudicial effect of the delayed discovery. *See Olmstead,* 832 F.2d at 649 (citing *United States v. Peters,* 732 F.2d 1004, 1009 (1st Cir. 1984) (considering preparation time as a factor when determining the prejudice to a defendant)).

Taking into account the preparation time that the defense has had to incorporate the admission into its trial strategy, the court hereby denies defendant's request for "the extraordinary relief of dismissal." *Hemmer,* 729 F.2d at 13; *see also Candelaria–Silva,* 162 F.3d at 703 ("This Court will not grant the 'draconian relief' of suppression and reversal when it is 'grossly disproportionate both to the prosecutor's nonfeasance and any prejudice to the defense.' ") (citation omitted).

### III. Conclusion

For the reasons stated above, the defendant's motion to dismiss for vindictive prosecution is **DENIED,** and the defendant's motion to dismiss for a Rule 16 discovery violation is also **DENIED.**

**IT IS SO ORDERED.**